UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DINA ADUEVA, *et al.*,                                    :
                                                          :
                                    Plaintiffs,           :
                                                          :          **OPINION & ORDER**
                    -against-                             :          17-cv-03350 (DLI)
                                                          :
ALEJANDRO MAYORKAS, in his official capacity :
as Secretary of Homeland Security, *et al.*,             :
                                                          :
                                    Defendants.           :
----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

Sixty-five plaintiffs[1] ("Plaintiffs") filed this action seeking declaratory and injunctive relief

under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq*; the Declaratory

Judgment Act, 28 U.S.C. § 2201; and the Mandamus Act, 28 U.S.C. § 1361, for adjudication of

employment authorization and issuance of interim employment authorization incident to their

pending applications for U nonimmigration status under 8 U.S.C. § 1101(a)(15)(U). *See*, Compl.,

Docket ("Dkt.") Entry No. 1. The suit is against defendants Alejandro Mayorkas, in his official

capacity as Secretary of the Department of Homeland Security ("DHS"), Tracy Renaud, in his

official capacity as Senior Official Performing the Duties of the Director of the United States

---

[1] Dina Adueva, Jose Xavier Albarracin Quito, Ana Laura Arroyo Barrios, Magaly Likonya Botsheya, Latoya Janielle Brown, Marleny Bueno Duran, Gabriela Caia Hoanas, Yesibel del Rocio Chamaidan Tenelema, Janet Chipol Baxin, Sandra Chu, Silvia Raquel Cordero Mejia, Lorena Cruz, Yadira Cruz, Blanca Olimpia Culala Guaman, Maria Davila, Celia Diaz Maldonado, Noris Horieta Dolmo Michael, Geetha Dsouza, Mercedes de la Luz Figon Santiago, Maria Teresa Flores, Blanca Flores Leal, Rosa Nohemi Garcia Diaz, Guadalupe Ernestina Garcia Quetzada, Transito Guaman May Ancela, Yolanda Maria Guzman Navarro, Najla Hamdi, Sonia Heredia Tacuri, Elizabeth Hernandez Vasquez, Alexandra Horvath, Maria Cristina Juarez Jimenez, Guadalupe Joseline Juarez Tapia, Malgorzata Jurga, Maharajee Khadaroo, Anna Korolenko, Wendy Tatiana Macias Murillo, Sandra Marte Mendez, Mararita del Pilar Martinez Garcia, Kathy-Ann Janelle McLean, Sharda Mohammed, Virginia Monfil Lezama, Maria Olivares Mani, Valerie Olivierre, Carolina Ortega, Tolmas Otamuradov, Ingrid Pavon Navarro, Eva Perez Hernandez, Sanita Persaud, Dinora Suyapa Pineda Sanchez, Elena Portillo Victoriano, Maria del Carmen Reyes Valerio, Ana Guachun Rocano, Miguelina Rodriguez De La Cruz, Olga Rodriguez Pastor, Daniela Salazar Orduña, Gina Santiago Abreu, Dominique Louise Schwenner, Genoveva Antonina Segura Martinez, Nelly Patrisia Sucuzhanay Minchala, Guadalupe Tapa Alvarez, Yvonne Angela Watson-Clarke, Rhonda Yvette Watson-Khan, Virginia Xelhua Garcia, Maria Narcisa Zhagnay Aguaiza, and Maria Luzmila Zhicay Centeno.

Citizenship and Immigration Services ("USCIS"), Laura Zuchowski, in her official capacity as Director of the Vermont Service Center of USCIS, and Mark Hazuda, in his official capacity as Director of the Nebraska Service Center of USCIS (collectively, "Defendants").[2] *Id.*

Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See*, Defs.' Mem. in Supp. of Mot. to Dismiss the Compl., or in the Alternative, for Summ. J. ("Defs.' Br."), Dkt. Entry No. 18. Plaintiffs cross-moved for summary judgment concurrently with their opposition to Defendants' motion to dismiss. *See*, Pls.' Mem. in Supp. for Cross-Mot. for Summ. J. and in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. ("Pls.' Br."), Dkt. Entry No. 22. The parties subsequently filed their respective replies. *See*, Defs.' Reply Mem. of Law ("Defs.' Reply"), Dkt. Entry No. 32; Pls.' Reply Mem. of Law ("Pls.' Reply"), Dkt. Entry No. 36. The parties also submitted supplemental authorities. *See*, Dkt. Entry Nos. 39, 42-43, 45-47, 50-51. For the reasons set forth below, Defendants' motion for summary judgment is denied, and Plaintiffs' cross-motion for summary judgment is granted.

## **BACKGROUND**

The following facts are taken from the parties' Local Civil Rule 56.1(a) statements, affidavits, and exhibits. Unless otherwise noted, these facts are not in dispute. As it must, the Court has considered only facts recited by Plaintiffs and Defendants in their respective Rule 56.1(a) statements and responses that are established by admissible evidence and disregarded conclusory allegations and legal arguments contained therein. *See*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no[] citations or where the cited materials do

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Alejandro Mayorkas has been substituted for John F. Kelly and Tracy Renaud has been substituted for James McCament.

not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion.") (internal quotation marks and citations omitted).

## I.     U Visa Application Process

In October of 2000, Congress created the U nonimmigrant status ("U Visa") program with the passage of Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA").  *See*, Pub. L. No. 106-386, § 1513(b), 114 Stat. 1464, 1534 (2000) (codified at 8 U.S.C. § 1101(a)(15)(U)). Congress enacted this nonimmigrant classification to "offer[] protection to victims" of serious crimes such as domestic violence, sexual assault and human trafficking, and to "facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused aliens who are not in lawful immigration status."  VTVPA § 1513(a)(2)(A)-(B), 114 Stat. at 1533-34.  In 2002, Congress created USCIS, a component of DHS, assigning to it immigration and naturalization matters, including the adjudication of immigrant visa petitions.  *See*, Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2193 (2002).

An individual is eligible for a U Visa if the individual was:  (1) a victim of qualifying criminal activity; (2) has suffered substantial physical or mental harm as a result; and (3) has been helpful to law enforcement in the investigation or prosecution of the crime.  *See*, 8 U.S.C. § 1101(a)(15)(U).  In order to obtain a U Visa, the eligible individual must submit a Form I-918, Petition for U Nonimmigrant Status, along with a written and sworn certification from law enforcement personnel stating that the applicant was a victim of a qualifying crime and helpful in the investigation or prosecution thereof.  *See*, 8 C.F.R. § 214.14(c).

The U Visa program has a statutory cap of 10,000 principal visas, known as U-1 Visas, per year.  8 U.S.C. § 1184(p)(2); *See also*, 8 C.F.R. § 214.14(d)(1).  On October 17, 2007, anticipating that the statutory cap in 8 U.S.C. § 1184(p)(2) would be exceeded within the first few fiscal years

of enactment, USCIS created a regulatory waiting list process, which is set forth in 8 C.F.R. § 214.14(d)(2).  Under this regulatory waiting list system, there is a two-step adjudication process for the U Visa program.  *See*, Defs,' Br. at 3-5; Decl. of Dustin J. Stubbs ("Stubbs Decl."), Dkt. Entry No. 19, at ¶ 8.  First, USCIS reviews U Visa petitions to determine whether they can be placed on the waiting list.  *Id.*  If USCIS approves the petition, but a visa is not available due to the statutory cap, the petitioner is placed on the waiting list until the visa can be approved.  *See*, 8 C.F.R. § 214.14(d)(2) ("Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving highest priority.").  Second, when a new fiscal year begins and additional 10,000 U Visas become available, petitions on the waiting list are reviewed to ensure the petitioners remain eligible, and eligible petitioners are granted U nonimmigrant status in the order of filing.  Stubbs Decl. at ¶ 8.

The number of new U Visa petitions filed each year has increased over the last several years.  *Id.* at ¶ 7.  In Fiscal Year 2009, USCIS received 6,835 new U Visa petitions.  *Id.* at ¶¶ 6-7.  In Fiscal Year 2016, USCIS received 35,044 new U Visa petitions.  *Id.* at ¶ 7.  By the end of that fiscal year, there were 86,980 principal U Visa petitions pending, an increase of approximately 23,000 principal petitions pending since the year before.  *Id.*  At the end of March 2017, over 97,000 U-1 Visa petitions were pending, including those already placed on the waiting list, and over 168,000 pending petitions overall, including petitions of the principal petitioners' family members.  *Id.*

The combination of the adjudicatory process, large number of applications filed each year, and annual statutory cap has led to exceptionally long processing times.  *Id*. at ¶¶ 7, 10-12.  As of August 13, 2020, USCIS was adjudicating U Visa petitions filed before December 9, 2015, over

four years from the time of filing.  *See*, USCIS Processing Time Information for the Vermont Service Center, https://egov.uscis.gov/processing-times (last visited August 13, 2020).

## II.  Process for Obtaining an Employment Authorization Document ("EAD")

When a U Visa petitioner receives the U Visa, he or she also receives an Employment Authorization Document ("EAD"), allowing the petitioner to work legally in the United States. *See,* 8 C.F.R. § 214.14(c)(7) ("An alien granted U-1 nonimmigrant status is employment authorized incident to status.  USCIS automatically will issue an initial [EAD] to such aliens who are in the United States.").  All eligible petitioners who are not granted U nonimmigrant status because of the 10,000-person statutory fiscal year cap must be placed on a waiting list by USCIS and notified of the placement.  8 C.F.R. § 214.14(d)(2).  USCIS "will grant deferred action" to the principal petitioner and derivative family members who are in the United States while the principal petition is on the waiting list and, "in its discretion, [USCIS] may authorize employment for such petitioners and qualifying family members."  *Id.*

On December 23, 2008, after the above regulatory waiting list system had been in place for approximately one year and cognizant of the administrative backlog, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), which amended 8 U.S.C. § 1184(p)(6).  *See*, TVPRA, Pub. L. 110-457, 122 Stat. 5044.  Section 1184(p)(6) specifies that "[t]he Secretary [of Homeland Security] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U)."  8 U.S.C. § 1184(p)(6).

At the time Plaintiffs submitted their Forms I-918 and EAD applications, 8 C.F.R. § 274a.13(d) provided that "USCIS will adjudicate the application within 90 days from the date of receipt of the application. . . .  Failure to complete the adjudication within 90 days will result in

the grant of an employment authorization document for a period not to exceed 240 days." 8 C.F.R. § 274a.13(d). On January 17, 2017, a revised version of § 274a.13(d) went into effect, eliminating both the ninety-day proceeding requirement for EAD applications and issuance of interim EADs. *See*, "Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 81 Fed. Reg. 82,398, 82,401 (Nov. 18, 2016).

Prior to the release of a new version of Form I-918 in February 2017, an applicant could apply for an EAD concurrently with his or her U Visa petition by checking "Yes" in response to Part 2, Question 7 of Form I-918, which stated, "I want an Employment Authorization Document." *See*, Suppl. Decl. of Carolien Hardenbol ("Suppl. Hardenbol Decl."), Dkt. Entry No. 38, at ¶ 4. An applicant also could apply for an EAD by filing a separate Form I-765, Application for Employment Authorization. *Id*. at ¶¶ 5-6. In October 2017, U Visa petitioners no longer were able to apply for an EAD on Form I-918. *See*, Form I-918 (Feb. 7, 2017 ed.); I-918, Petition for U Nonimmigrant Status, https://www.uscis.gov/i-918 (last visited July 30, 2017) ("Starting 10/02/17, we will only accept the 02/07/17 edition [of Form I-918].").

## III.   Plaintiffs' Applications and Claims

Plaintiffs are 65 undocumented individuals, who were victims of qualifying crimes, seeking adjudication of their applications for EADs incident to their pending applications for U Visas by USCIS's Vermont Service Center. *See*, Compl. ¶ at 17; Plaintiffs' Statement of Material Facts Not in Dispute Pursuant to Local Rule 56.1 ("Pls.' Rule 56.1 Stmt."), Dkt. Entry No. 23, at ¶ 3; *See also*, Decl. of Carolien Hardenbol ("Hardenbol Decl."), Dkt. Entry No. 24, at ¶¶ 3-197. Each Plaintiff filed a U Visa petition via Form I-918 prior to January 17, 2017. Pls.' Rule 56.1 Stmt. at ¶¶ 1-3. Each petition also included a Form I-918 Supplement B, U Nonimmigrant Status Certification, signed by a law enforcement agency, prosecutor, judge or other qualified

government official, documenting that the petitioner aided law enforcement by providing information that was helpful to the investigation or prosecution of those crimes. *Id.* at ¶ 3. Every Plaintiff requested an EAD by checking "Yes" in response to Part 2, Question 7 of Form I-918. *Id.* at ¶ 4. No Plaintiff has been granted an EAD or interim EAD by USCIS. *Id.* at ¶¶ 6-8.

Plaintiffs argue that 8 U.S.C. § 1184(p)(6) provides them a right to the adjudication of their pending EAD applications, regardless whether they were filed via Form I-918 or Form I-765. Pls.' Br. at 9-12. Plaintiffs emphasize that they are not asking Defendants to grant them U Visa status or EADs, but rather that Defendants adjudicate their EAD applications in accord with the statute. *Id.* at 22.

Defendants contend, as an initial matter, that the Court lacks subject matter jurisdiction over Plaintiffs' claims, asserting that courts have no jurisdiction to hear claims concerning actions taken by the Attorney General in immigration matters. *See*, Defs.' Br. at 19. Defendants further contend that the discretionary language of 8 U.S.C. § 1184(p)(6) does not provide a right to have Plaintiffs' applications adjudicated as they assert. *Id.* at 17-18; Defs.' Reply 6-7. Defendants argue that, even if Plaintiffs have that right, the current regulatory waiting list system under 8 C.F.R. § 214.14(d)(2) is a reasonable method for issuing EADs. *See*, Defs.' Br. at 18-20; Defs.' Reply at 7-9.

The parties also disagree as to whether 8 C.F.R. § 274a.13(d) is applicable to Plaintiffs' EAD applications. Plaintiffs argue that they have a right to an interim EAD under the pre-January 2017 version of 8 C.F.R. § 274a.13(d) because their EAD applications have been pending for more than ninety days. *See*, Pls.' Reply at 20-21. Defendants contend that the pre-January 2017 version should not apply retroactively to Plaintiffs' applications and, even if it does, the regulation still is

not applicable to Plaintiffs because they have not been granted deferred action yet.  *See*, Defs.' Br. at 20-24; Defs.' Reply at 11-13.

Plaintiffs claim that Defendants' refusal to adjudicate Plaintiffs' EAD applications pursuant to 8 U.S.C. § 1184(p)(6) constitutes "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1) of the APA.  Compl. at ¶¶ 44-46.  Additionally, Plaintiffs claim that Defendants' failure to issue interim EADs pursuant to the pre-January 2017 version of 8 C.F.R. § 274a.13(d) constitutes an arbitrary or capricious agency action under 5 U.S.C. § 706(2)(A).  *Id.* at ¶¶ 49-50.  Plaintiffs ask the Court to compel Defendants to adjudicate their EAD applications or issue them interim EADs pursuant to declaratory and injunctive relief authorized by the APA. *Id.* at "Prayer for Relief" ¶¶ 2-3.  Moreover, Plaintiffs seek an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.  *Id.* at "Prayer for Relief" ¶ 4.

## LEGAL STANDARDS

Defendants move to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and both parties move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  "Rule 12(b)(6) permits a district court to consider matters outside of the pleadings and to treat a motion for dismissal as one for summary judgment provided 'all parties [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'"  *In re Nagler*, 246 F. Supp.3d 648, 652 n.3 (E.D.N.Y. 2017) (quoting Fed. R. Civ. P. 12(b)(6)).  When a court evaluates multiple motions for summary judgment, each party's motion must be evaluated "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Bryne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (citation omitted).

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* In order to defeat a summary judgment motion, the non-moving party "must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (internal quotation marks and citation omitted). Those specific facts must be more than "conclusory statements, conjecture, or speculation." *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003).

Under the APA, courts review issues of law *de novo*. *See*, 5 U.S.C. § 706 ("[T]he reviewing court shall decide all relevant questions of law . . . ."). The APA provides that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(1), (2)(A). An agency unlawfully withholds or unreasonably delays an action if it "fail[s] to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). A failure to act "is simply the omission of an action without formally rejecting a request – for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Id.* at 64. "When an administrative agency simply refuses to act upon an application, the proper remedy – if any – is

an order compelling agency action." *McHugh v. Rubin*, 220 F.3d 53, 61 (2d Cir. 2000) (citations omitted).

Courts defer to an agency's reasonable interpretation of an ambiguous statute that the agency is charged with administering. *See*, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). Deference to the agency is not warranted "if the agency has misconceived the law," or if "the intent of Congress is clear, . . . for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *R.F.N. v. Nielsen*, 365 F. Supp.3d 350, 361 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) and *Chevron*, 467 U.S. at 842-43) (internal quotation marks omitted)); *See also*, *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007).

*Auer* deference governs an agency's interpretation of its own regulations. *Auer v. Robbins*, 519 U.S. 452 (1997). When a regulation is ambiguous, courts must defer to the agency's interpretation "unless that interpretation is plainly erroneous or inconsistent with the regulation[s] or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Mullins v. City of New York*, 653 F.3d 104, 106 (2d Cir. 2011) (quoting *Talk Am., Inc. v. Michigan Bell Tel. Co.*, 564 U.S. 50 (2011) (internal quotation marks omitted)). "*Auer* deference is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000). "[S]tatutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." *Dobrova v. Holder*, 607 F.3d 297, 301 (2d. Cir. 2010) (internal quotation marks and citations omitted).

## DISCUSSION

## I.      Subject Matter Jurisdiction

As a threshold matter, the Court must address Defendants' contention that the Court lacks jurisdiction over Plaintiffs' claims.  Relying on *Reno v. American-Arab Anti-Discrimination Comm.*, Defendants contend that, "pursuant to 8 U.S.C. § 1252(g), [n]o courts have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ." Defs.' Br. at 19 (quoting *Reno*, 525 U.S. 471, 478 (1999)) (internal quotation marks omitted).

The Court does not concur with Defendant's overly expansive reading of the statute and the holding in *Reno*.  Title 8 U.S.C. § 1252(g) applies "only to three discrete actions that the Attorney General may take" within the deportation process, none of which applies here.  *Reno*, 525 U.S. at 482-83.  The Supreme Court "did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General.  Instead, [the Court] read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (citing *Reno*, 525 U.S. at 482-83).  Accordingly, this Court finds it has jurisdiction over Plaintiffs' claims pursuant 5 U.S.C. § 702 of the APA ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

## II.     Plaintiffs' APA Claim Under 8 U.S.C. § 1184(p)(6)

## A.      Right to an Adjudication Under § 1184(p)(6)

Plaintiffs allege that, by enacting 8 U.S.C. § 1184(p)(6), Congress imposed a nondiscretionary duty on USCIS to adjudicate applications for EADs.  Compl. at ¶ 44.  Defendants argue that there is nothing to adjudicate because Plaintiffs have not filed "actionable" EAD

applications under 8 U.S.C. § 1184(p)(6).  *See*, Defs.' Resps. to Pls.' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' Rule 56.1 Resp."), Dkt. Entry No. 34, at ¶ 6; *See also*, Defs.' Reply at 2, 5.  Defendants contend that each Plaintiff separately should have filed a Form I-765 because the checked EAD box on Form I-918 was meant to "communicate [Plaintiff's] desire to receive EADs incident" to approved U Visa petitions and was not a separate EAD application pursuant to § 1184(p)(6).  Defs.' Reply at 3-4.  According to Defendants, at the time of Plaintiffs' Form I-918 submissions, USCIS' designated method for requesting an EAD was the filing a Form I-765.  *Id.* at 3 (citing 8 C.F.R. § 103.7(b)(1)(i)(II); Instructions for Application for Employment Authorization (Form I-765) (July 17, 2017 version); "Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 81 Fed. Reg. at 82,401).

In *Rodriguez v. Nielsen*, the Honorable Margo K. Brodie, Chief United States District Judge of this Court, addressed the same argument.  *See*, *Rodriguez v. Nielsen*, 2018 WL 4783977, *8-9 (E.D.N.Y. Sept. 30, 2018).  The underlying facts in *Rodriguez* are nearly identical to those in the present case, and the arguments raised by the *Rodriguez* defendants are identical to the ones raised by Defendants here.  As the Plaintiffs did here, the plaintiff in *Rodriguez* submitted his Form I-918 U Visa petition with the box requesting EAD checked, but the defendants never adjudicated the plaintiff's EAD application nor issued an interim EAD to the plaintiff.  *Id.* at *2.  The *Rodriguez* court denied the defendants' motion for summary judgment and ordered the defendants to adjudicate the plaintiff's EAD application within ninety days or issue him an interim EAD pursuant to 8 U.S.C. § 1184(p)(6) and 8 C.F.R. § 274a.13(d). [3]  *Id.* at *1, 22.

---

[3] *Rodriguez* is one of the supplemental authorities Plaintiffs submitted.  *See*, Dkt. Entry No. 39.  The defendants in *Rodriguez* did not appeal Chief Judge Brodie's decision.  More than 20 cases across multiple federal districts have cited *Rodriguez*, most of them favorably.  Among nine cases that extensively discussed *Rodriguez*, the Honorable Margaret B. Seymour, a U.S. District Judge of the District of South Carolina, favorably cited *Rodriguez* in five of her

The *Rodriguez* court found that "[u]ndoubtedly and undisputedly, [p]laintiff applied for an EAD pursuant the instructions available to him in 2015 when he filed his U Visa petition." *Rodriguez*, 2018 WL 4783977 at *8.  The *Rodriguez* court rejected the defendants' argument that the plaintiff was required to file a Form I-765 separately for two principal reasons:  (1) when the plaintiff submitted his Form I-918 in August 2015, the plaintiff was not required to file a Form I-765 in order to apply for an EAD pursuant to § 1184(p)(6); and (2) contrary to the defendants' suggestion, the plaintiff could not have applied for an EAD pursuant to 8 U.S.C. § 1184(p)(6) by filing a Form I-765 because USCIS  "routinely rejected such applications from U Visa petitioners using the Form I-765 . . . on the ground that section 1184(p)(6) . . . [was] not an appropriate basis for EAD eligibility."  *Id.* at *9.

The Court concurs with the Rodriguez court's sound legal analysis and rejects Defendants' argument for the same reasons stated in *Rodriguez*.   Here, the parties agree that each Plaintiff submitted his or her Form I-918 with the "Yes" box checked next to "I want an Employment Authorization Document."  Pls.' Rule 56.1 Stmt. at ¶ 4; Defs.' Rule 56.1 Resp. at ¶ 4.  The instruction for Form I-918 in place at the time of Plaintiffs' submission of the form is the same as the one in place at the time of the *Rodriguez* plaintiff's submission.  *See*, New Classification for Victims of Criminal Activity, 72 Fed. Reg. 53,014 (Sept. 17, 2007); *See also*, *Rodriguez* 2018 WL 4783977 at *8-9; Defs.' Reply at 4.  The instruction states:

---

decisions.  *See*, *Pulido v. Cuccinelli*, 497 F.Supp.3d 79 (D.S.C. 2020); *Aguilar v. Cuccinelli*, 2020 WL 5898880 (D.S.C. Oct. 5, 2020); *Herrera v. Cuccinelli*, 2020 WL 5898987 (D.S.C. Oct. 5, 2020); *Monjaraz v. Cuccinelli*, 2020 WL 5898989 (D.S.C. Oct. 5, 2020); *Solis v. Cissna*, 2019 WL 8219790 (D.S.C. July 11, 2019).  Another court in the District of South Carolina also favorably cited *Rodriguez*.  *See*, *Andrade Carranza v. Cuccinelli*, 2020 WL 6292639 (D.S.C. Mar. 23, 2020) *report and recommendations adopted by* 2020 WL 5810516 (D.S.C. Sep. 30, 2020).  Three courts have disagreed with Chief Judge Brodie's finding that USCIS has a nondiscretionary duty to adjudicate EADs under 8 U.S.C. § 1184(p)(6).  *See*, *N-N v. Mayorkas*, 2021 WL 1997033, *10-11 (E.D.N.Y. May 18, 2021); *Uranga v. U.S. Citizenship & Immigration Servs.*, 490 F. Supp.3d 86, 99-100 (D.D.C. 2020); *M.J.L. v. McAleenan*, 420 F. Supp.3d 588, 597 n.10 (W.D.T.X. 2019).

> For principal aliens seeking their first EAD based upon U nonimmigrant status, USCIS will use the information contained in Form I-918 to *automatically generate an EAD, such that a separate request for an EAD is not necessary* . . . USCIS has designed the Form I-918 so that it serves the dual purpose of requesting U nonimmigrant status and their employment authorization to streamline the application process.  Therefore, principal aliens will not have to file additional paperwork to obtain an initial EAD.

New Classification for Victims of Criminal Activity, 72 Fed. Reg. 53,014 (Sept. 17, 2007) (emphasis added).  The Court agrees with the *Rodriguez* court that this instruction did not require any additional form other than the Form I-918 when seeking an EAD pursuant to § 1184(p)(6). *See*, *Rodriguez* 2018 WL 4783977 at *8-9.

Moreover, USCIS' practice does not support Defendants' argument that filing Form I-756 was the only authorized way to apply for an EAD under § 1184(p)(6).  *See*, *Id.* at *9.  Until June 2015, USCIS was confirming receipt of a Form I-716, even when an applicant only had filed a Form I-918 with the EAD application box checked.  *Id.*  Although almost all Plaintiffs filed their Forms I-918 after USCIS had ended this practice, one of them received a confirmed receipt of a Form I-765 application for an EAD, even though that Plaintiff only had filed a Form I-918 and had not filed a separate Form I-765.  *See,* Pls.' Reply at 6, 6 n.4; *See also*, Suppl. Hardenbol Decl. at ¶ 5.

Here, twenty-two Plaintiffs submitted Forms I-716 in addition to their Forms I-918, but fifteen of those Form I-716 applications were rejected by USCIS and the remaining seven did not receive any response to their applications.   Pls.' Reply at 6-7; *See also*, Suppl. Hardenbol Decl. App. A.  As the *Rodriguez* court noted, USCIS would not have adjudicated Plaintiffs' EAD applications without prior entry on the U Visa waiting list, regardless whether they had used Form I-918 or Form I-765.  *Rodriguez*, 2018 WL 4783977, at *9.  Thus, Defendants' argument that Plaintiffs did not submit "actionable" EAD applications under § 1184(p)(6) is unconvincing.

14

Plaintiffs applied for EADs in the manner available to them at the time they filed their applications and "in a manner USCIS' internal regulations equated with filing a Form I-765 Application for Employment Authorization – by checking the box requesting an EAD on [their] Form I-918 U Visa Petition[s]." *Id*.

Next, Defendants contend that, in enacting 8 U.S.C. § 1184(p)(6), which states that "[t]he Secretary [of DHS] may grant work authorization," Congress gave the Secretary, and USCIS as his designee, the authority, rather than the duty, to implement a program for receiving, considering, and adjudicating EAD applications filed by individuals with pending, bona fide U Visa petitions. Defs.' Reply at 6.  According to Defendants, neither DHS nor USCIS was required under the statutory scheme to implement a process for the receipt, consideration, and adjudication of employment authorization applications filed by individuals on the basis of their pending, bona fide U Visa applications.  *Id*. at 6-7.  Defendants claim, moreover, that no legislation ever has directed USCIS to implement a provision or impose a timeline for adjudicating EAD applications.  *Id.* at 7.  Finally, Defendants argue that the statutory language of the work authorization clause under § 1184(p)(6) is a permissive one, which stands in contrast to the mandatory language provided in 8 U.S.C. § 1184(p)(3)(B) that states, "the Attorney General shall . . . provide the aliens with employment authorization."  *Id*.

Defendants' contentions are meritless.  On the contrary, § 1184(p)(6) requires USCIS to adjudicate EAD applications with pending, bona fide U Visa petitions.  Defendants "conflate the discretionary language governing grants of employment in the statute ('may grant') with the nature of the statute itself."  *Rodriguez*, 2018 WL 4783977 at *11.  Plaintiffs are "asserting a right to an *adjudication* under the statute, not a right to an EAD."  *Id.* (emphasis in original).  As such, while § 1184(p)(6) does not obligate Defendants to grant Plaintiffs EADs, it obligates Defendants to

*adjudicate* Plaintiffs' EAD applications.  *Id.* (citing *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d

540, 546 (S.D.N.Y. 2008) (citation omitted)).

Defendants further contend that they do not have a duty to adjudicate EADs under §

1184(p)(6) because the statute does not define what a "bona fide" application is.  *See*, Defs.' Br.

at 18; Defs.' Reply at 9.  As in *Rodriguez*, Defendants here admit that the definition of "bona fide"

in the T Visa context is instructive for determining the definition of "bona fide" in § 1184(p)(6).

*See*, *Rodriguez*, 2018 WL 4783977, at *11; *See also*, Defs.' Reply at 9.  The T Visa allows certain

victims of a severe form of human trafficking and their immediate family members to remain and

work temporarily in the United States.  *See*, 8 U.S.C. § 1101(a)(15)(T).  The legislation that created

the T Visa uses the term "bona fide" in connection to T Visa applications but did not define the

term.  *See*, Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464.

Nonetheless, USCIS defined the term when it promulgated an agency regulation that gave effect

to the statutory T Visa framework.  *See*, 8 C.F.R. § 214.11(a).  "[N]othing prevents USCIS from

promulgating such a regulation in the U Visa context."  *Rodriguez*, 2018 WL 4783977, at *11.

Accordingly, this Court rejects Defendants' argument that they cannot adjudicate Plaintiffs' EADs

because the term "bona fide" is not defined in § 1184(p)(6).  *Id.*

As the court did in *Rodriguez*, this Court finds that it is "disingenuous" for Defendants to

argue that they have no duty to adjudicate EADs under § 1184(p)(6) because the statute does not

provide a timeframe for issuing EADs.  *Rodriguez*, 2018 W 4783977 at *12; *See also*, Defs.' Br.

at 18.  As the *Rodriguez* court explained, "other statutory provisions governing the U Visa program

and related work authorization contain a timeframe for adjudications."  *Rodriguez*, 2018 W

4783977 at *12 (citing 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C. § 1184(p)).  When Congress passed §

1184(p)(6), there was a ninety-day timeframe in place to adjudicate EAD applications under the

pre-January 2017 version of 8 C.F.R. § 274a.13(d).  *Id.*  As the *Rodriguez* court emphasized, USCIS can implement its own work authorization process or promulgate regulations without Congressional direction.  *Id.*  Lastly, "a lack of a timeframe alone does not render the statute optional."  *Id.* (citing *Sultan v. Roark*, 2018 WL 1992195, at *5 (E.D. Cal. May 13, 2010)).  In sum, Plaintiffs are entitled to adjudications on their pending EAD applications.

**B.     Relief Under the APA**

Plaintiffs claim that Defendants' refusal to adjudicate Plaintiffs' EAD applications under § 1184(p)(6) constitutes an agency action unlawfully withheld or unreasonably delayed under the APA.  Compl. at ¶¶ 45-47; Pls.' Br. at 8-9.  "USCIS's policy that it will not review EAD applications based on section 1184(p)(6) prior to adjudicating the merits of a corresponding U Visa petition constitutes 'agency action unlawfully withheld or unreasonably delayed.'"  *Rodriguez*, 2018 WL 4783977, at *12. (citing 5 U.S.C. § 706(1)).  For the reasons set forth below, Defendants' decision not to implement § 1184(p)(6) and to ignore Plaintiffs' EAD applications constitutes an "agency action unlawfully withheld."  *Id.* at *13.

According to Defendants, instead of implementing § 1184(p)(6), they opted for a system under 8 C.F.R. § 214.12(d)(2) in which every U Visa petition must undergo a review to be placed on the waiting list and, once on the list, the petitioner is granted "deferred action," which then makes the petitioner eligible to apply for an EAD.  Defs.' Br. at 18; Defs.' Reply at 8-9.  Defendants argue that this regulatory waiting list and deferred action system "serve[s] as the basis for work authorization for individuals with pending, bona fide U petitions" pursuant to § 1184(p)(6).  Defs.' Br. at 18.  The defendants in *Rodriguez* made the identical arguments to no avail.  Here, as in *Rodriguez*, this argument "is not supported by the evidence and appears to be a

*post hoc* rationalization by Defendants in view of their admission that they did not implement section 1184(p)(6)." *Rodriguez*, 2018 WL 4783977, at *14.

The timing and legislative intent behind § 1184(p)(6), as well as its plain language, "demonstrate that Congress intended to extend work authorization to bona fide petitioners *prior* to an adjudication of their applications on the merits." *Id.* (emphasis in original). Congress enacted § 1184(p)(6) on December 23, 2008, over a year after USCIS began issuing work authorizations to those on the waiting list under 8 C.F.R. § 214.12(d)(2). *Id.* (citing TVPRA, Pub. L. 110-457, 122 Stat. 5044; New Classification for Victims of Criminal Activity (2008); Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014, 53,014 (Sept. 17, 2007)). Thus, "[a]t the time of its passage, USCIS already had procedures in place to provide work authorization to petitioners on the waiting list." *Id.* It is clear that Congress meant for the term "bona fide" in § 1184(p)(6) to "extend eligibility to petitioners based on a threshold determination, not a merits based review." *Id.*

Furthermore, when enacting § 1184(p)(6), the sponsors of the bill were concerned about the length of the waiting period before petitioners were granted work authorizations. 154 CONG. REC. H10,888, 10,905 (daily ed. Dec. 10, 2008) (statement of Reps. Berman and Conveyers) ("Immigrant victims of … violent crimes should not have to wait for up to a year before they can support themselves and their families")). The sponsors further stated that USCIS should strive to issue EADs within sixty days of the filing of an application. *Id.* Congress would not have enacted the work authorization clause under § 1184(p)(6) if USCIS "was already satisfactorily doing so through the waiting system." *Rodriguez*, 2018 WL 4783977, at *14 n.19. As in *Rodriguez*, Defendants' argument here "presumes that section 1184(p)(6) Pending Petition is duplicative of the already existing law (section 214.14(d)(2) Waiting List EAD) – rendering the statute

superfluous." *Id.* at \*14 (citing *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013)). "A finding that Section 1184(p)(6) is superfluous would 'violate[] the familiar doctrine that Congress cannot be presumed to do a futile thing.'" *Id.* (quoting *Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir 1997)).

Defendants contend that "moving [P]laintiffs to the front of the line would cause other victims of crime to wait longer for adjudication." Defs.' Br. at 20.  This argument is applicable to determining only whether agency action has been "unreasonably delayed," not whether agency action has been "unlawfully withheld." *Rodriguez*, 2018 WL 4783977, at \*15 n.21 (citing *Hoo Loo v. Ridge*, 2007 WL 813000, at \*3 (E.D.N.Y. Mar. 14, 2007)).  Thus, the Court need not reach the issue of whether the delay is reasonable because it finds that the right to an EAD adjudication under § 1184(p)(6) has been withheld unlawfully. *Id.* (citations omitted).  Accordingly, pursuant to the relief provided in 5 U.S.C. § 706(1), the Court orders Defendants to review Plaintiffs' petitions expeditiously to determine whether they are entitled to EADs under 8 U.S.C. § 1184(p)(6).

## III.   Plaintiffs' APA Claim Under 8 C.F.R. § 274.14(d)

### A.   Right to a Grant of an Interim EAD Pursuant to § 274.14(d)

Plaintiffs argue that, pursuant to 8 C.F.R. § 274a.13(d), Defendants have a nondiscretionary duty to grant interim EADs to Plaintiffs because their EAD applications have been pending for more than 90 days since Defendants received the applications. *See*, Pls.' Br. at 8, 20.  The pertinent text of the pre-January 2017 version of 8 C.F.R. § 274a.13(d) states that:

> USCIS will adjudicate the application within 90 days from the date of receipt of the application, except as described in 8 CFR 214.2(h)(9)(iv), and except in the case of an initial application for employment authorization under 8 CFR 274a.12(c)(8), which is governed by paragraph (a)(2) of this section, and 8 CFR 274a.12(c)(9) in so far as it is governed by 8 CFR 245.13(j) and

> 245.15(n).  Failure to complete the adjudication within 90 days will
> result in the grant of an employment authorization document for a
> period not to exceed 240 days.

8 C.F.R. § 274a.13(d).  The three enumerated exceptions mentioned in this version of § 274a.13(d)

are not applicable in the instant action.  A January 17, 2017 revision of 8 C.F.R. § 274a.13(d) no

longer requires USCIS to adjudicate EAD applications within 90 days from the date of the receipt

of the application (the "90-day Period") or grant interim EADs.  *See*, "Retention of EB-1, EB-2,

and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant

Workers," 81 Fed. Reg. 82398 (Nov. 18, 2016).

The parties agree that each Plaintiff filed his or her Form I-918 between May 2015 and

January 17, 2017 and no Plaintiff has been issued an interim EAD as of October 2017.  *See*, Pls.'

Rule 56.1 Stmt. at ¶¶ 2, 8; Defs.' Rule 56.1 Resp. at ¶¶ 2, 8; Defs.' Br. at 8.  Plaintiffs contend

that, since their EAD applications have been pending for more than 90 days, USCIS' declination

to grant them interim EADs pursuant § 274a.13(d) is arbitrary and capricious under 5 U.S.C.

§ 706(2)(A).  Compl. ¶¶ 49-50.

Defendants disagree on three grounds.  First, Defendants argue that the pre-January 2017

version of § 274a.13(d) should not apply to Plaintiffs' applications and, as such, Plaintiffs have no

vested right to an EAD under the regulation.  *See*, Defs.' Br. at 20-22; Defs.' Reply at 11-13.

Second, Defendants argue that, even if the pre-January 2017 version was in effect during Plaintiffs'

EAD applications, § 274a.13(d) does not apply to Plaintiffs because Plaintiffs are not on the U

Visa waiting list and, thus, not in "deferred action" status under the regulation.  *See*, Defs.' Br. at

23-24; Defs.' Reply at 11-13.  Third, Defendants maintain that their interpretation of the pre-

January 2017 version of § 274a.13(d) is entitled to *Auer* deference.  Defs.' Br. at 23.  Defendants'

arguments are without merit.

Plaintiffs filed their Forms I-918 before January 17, 2017.  Pls.' Rule 56.1 Stmt. at ¶ 2.
Defendants nevertheless contend that the pre-January 2017 version of §274a.13(d) should not
apply to Plaintiffs' EAD applications because USCIS has not reviewed any petition filed after
August 25, 2014.  Defs.' Br. at 8, 20-22; Defs.' Reply at 11-13; *See also*, Stubbs Decl. at ¶¶ 14,
17.  Here, Defendants essentially claim that the regulation does not apply because they were
derelict in processing Plaintiffs' applications in accordance with the regulation.

In *Landgraf v. USI Film Prods.*, the Supreme Court established a two-step framework for
determining retroactivity.  *Centurion v. Sessions*, 860 F. 3d 69, 74 (2d Cir. 2017) (citing *Landgraf*,
511 U.S. 244, 280 (1994)).  The first step requires courts to determine whether Congress expressly
provided that the statute applies retroactively.  *Id*. at 74-75 (citing *Langford*, 511 U.S. at 280).  If
"the statute contains no such express command," a court moves to the second step, examining
whether the statute has a "retroactive effect."  *Langford*, 511 U.S. at 280.  Analyzing retroactive
effect requires an assessment of "the nature and extent of the change in the law and the degree of
connection between the operation of the new rule and a relevant past event."  *Id*. at 270.  The
analysis also requires an inquiry as to "whether the new provision attaches new legal consequences
to events completed before its enactment."  *Id*.  A statute is impermissibly retroactive if it "takes
away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a
new duty, or attaches a new disability, in respect to transactions or considerations already past."
*Id*. at 269 (quoting *Soc'y for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756 (No. 13,156)
(CCNH 1814)).

Applying the first step of the *Landgraf* framework, the revised § 274a.13(d) is silent as to
its retroactivity.  *See*, 8 C.F.R. § 274a.13.  As to the second step, the Court finds that retroactively
applying the revised regulation will "take away or impair [Plaintiffs'] vested rights acquired under

existing laws." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (quoting *Wheeler*, 22 F. Cas. at 767) (internal quotation marks omitted).  Plaintiffs' right to have their EAD applications adjudicated within the 90-day Period vested when they applied for EADs and their rights to interim EADs vested when their applications had been pending for more than 90 days without being acted upon. *See*, *Rodriguez*, 2018 WL 4783977, at *18 (citing *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 n.10 (2006) (finding that rights vest when an individual has "availed himself of them or [taken] action that enhanced their significance to him in particular")).  Thus, applying the revised version of the regulation would "strip" Plaintiffs' vested rights to the 90-day EAD adjudication timeframe and the issuance of interim EADs.  *Id.* at *18 (citing *Vartelas*, 566 U.S. at 266).

Defendants contend that "filing an application for an administrative benefit does not create a vested right in that benefit."  Defs.' Br. at 22 (citing *Durable MFG Co. v. U.S. Dep't. of Labor*, 578 F.3d 497, 503 (7th Cir. 2009)); Defs.' Reply at 13 (citing *Labojewski v. Gonzales*, 407 F.3d 814, 822 (7th Cir. 2015)).  Defendants are correct to the extent that Plaintiffs have no vested right an EAD pursuant to § 1184(p)(6).  However, Defendants conflate Plaintiffs' lack of entitlement to EADs with their entitlement to the nondiscretionary benefits provided under § 274a.13(d), namely the adjudication of their EAD applications within ninety days of receipt or issuance of interim EADs.  *See*, *Rodriguez*, 2018 WL 4783977, at *18.  Although Plaintiffs' EAD applications were not filed under § 274a.13(d), they are entitled to interim EADs because Defendants have failed to adjudicate their EAD applications within the 90-day Period.  *Id.*

Moreover, in *Landgraf,* the Supreme Court noted that "retroactivity is a matter on which judges tend to have . . . familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance."  *Landgraf*, U.S. 244 at 270 (citation omitted).  Relying on this, Defendants argue that USCIS gave "[P]laintiffs, and other similarly situated, fair notice of

22

the changes" to § 274a.13(d) because the changes were published in a document in the Federal Register.  Defs.' Br. at 22 (citing *Elim Church of God v. Harris*, 722 F.3d 1137, 1141 (9th Cir. 2013)).  Defendants further argue that Plaintiffs cannot rely reasonably or have a settled expectation for the issuance of interim EADs because "USCIS has never issued interim EAD[s] to individuals in their circumstances."  Defs.' Br. at 22.

These arguments are meritless.  Defendants "offer no evidence that Plaintiff[s] knew, or could have known, of this unstated USCIS policy such that [they] could not rely on the plain language of the statutory provision."  *Rodriguez*, 2018 WL 4783977, at *18; *See also*, *Aguilar v. Cuccinelli*, 2020 WL 5898880, at *10 (D.S.C. Oct. 5, 2020) (relying on the *Rodriguez* court's analysis to reject the same arguments from the defendants).  In addition, "'reasonable reliance' is 'not a necessary predicate for invoking the antiretroactivity principle.'"  *Rodriguez*, 2018 WL 4783977, at *18 (quoting *Vartelas*, 566 U.S. at 273-74).

In sum, applying the revised version of 8 C.F.R. § 274a.13(d) would strip Plaintiffs' vested rights either to have their EAD applications adjudicated within the 90-day Period or receive interim EADs.  Accordingly, the revised version of § 274a.13(d) cannot apply to Plaintiffs' applications retroactively and the applications must be adjudicated under the pre-January 2017 version of § 274a.13(d).

Defendants also assert that, independent of the retroactivity issue, the pre-January 2017 version of § 274a.13(d) does not apply to Plaintiffs' applications because 8 U.S.C. § 274a.12 governs the applications instead.  Defs.' Br. at 23.  Defendants contend that the only applicable category under which Plaintiffs, U Visa petitioners with pending applications, eventually could be eligible for an interim EAD is as an "alien granted deferred action" under 8 C.F.R. § 274a.12(c)(14).  *Id.*  Section 274a.12(c)(14) states, in pertinent part:

(c) Aliens who must apply for employment authorization.  An alien within a class of aliens described in this section must apply for work authorization.  If authorized, such an alien may accept employment subject to any restrictions stated in the regulations or cited on the employment authorization document. . . .

(14) An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment . . . .

8 C.F.R. § 274a.12(c)(14).  According to Defendants, Plaintiffs are not yet eligible for deferred action status because they have not been placed on the waiting list pursuant to 8 C.F.R. § 214.14(d)(2).  *See*, Defs.' Br. at 23; *See also*, Defs.' March 10, 2020 Letter, Dkt. Entry No. 49 ("[Plaintiffs] have received no merits-based adjudicative review of the underlying petitions on which the employment authorization requests are based.").

Nonetheless, 8 C.F.R. § 274a.12 does not purport to provide an exhaustive description of all qualifying bases for work authorization.  *See*, *Rodriguez*, 2018 WL 4783977, at *16.  The list includes U Visa *recipients* but not U Visa *petitioners* applying for an EAD under § 1184(p)(6). *Id.*  "Defendants' decision not to include this latter category in section 274a.12 Classes of Aliens – likely because they 'never implemented' section 1184(p)(6) – does not strip Plaintiff[s] of [their] statutory grant of work authorization eligibility pursuant to section 1184(p)(6) EAD Pending Petition."  *Id.* (emphasis in original).

Lastly, Defendants argue that their own interpretation of the pre-January 2017 version of § 274a.13(d) is entitled to *Auer* deference as a federal agency's interpretation of its own regulation. *See*, Defs.' Br. at 23 (citing *Auer*, 519 U.S. at 461).  According to Defendants, an interpretation that the 90-day Period under § 274a.13(d) does not begin until after USCIS had reviewed the U Visa petition, placed petitioners on a waiting list, and then in deferred action status to be eligible

24

for an EAD is reasonable.  *Id.* at 24.  Defendants claim that they do not have an obligation to adjudicate Plaintiffs' EAD applications.  *Id.*

However, the plain language of § 274a.13(d) is clear and unambiguous as to Defendants' obligation here.  The regulation states that "USCIS *will* adjudicate the application within *90 days from the date of receipt of the application* . . . ."  8 C.F.R. § 274a.13(d) (emphasis added).  The regulation further provides that "[f]ailure to complete the adjudication within 90 days *will result* in the grant of an employment authorization document for a period not to exceed 240 days."  *Id.* (emphasis added).  Defendants' interpretation as to the commencement of the 90-day Period is completely erroneous, defies the plain meaning of the relevant statute here, *i.e.*, 8 U.S.C. § 1184(p)(6), and is irrelevant as it pertains to 8 C.F.R. § 274a.13(d)(2), which is inapplicable.  The *Rodriguez* court so found in analyzing the identical argument by the defendants under the same circumstances presented here.  *See*, *Rodriguez*, 2018 WL 4783977, at *18-19; *See also*, *Cruz-Miguel v. Holder*, 650 F.3d 189, 195 (2d Cir. 2011)).  Accordingly, Defendants are not entitled to *Auer* deference.

Defendants' contention that that such a holding would be "wholly unreasonable" because USCIS would have "to review tens of thousands of EAD applications within 90 days, before reviewing the U petitions on their merits to determine eligibility for the U waiting list and the deferred action on which the EAD applications are based" is utterly baseless.  Defs.' Br. at 24. Defendants erroneously conflate Plaintiffs' EAD applications, which are based on pending, bona fide U Visa petitions under § 1184(p)(6), with EAD applications based on waiting list status under § 214.14(d)(2).  Therefore, the "tens of thousands" of applications brought pursuant to that latter provision are irrelevant to the case at hand.  Furthermore, Defendants had the option under §

274a.13(d) to issue interim EADs to those petitioners whose applications USCIS could not adjudicate within the 90-day Period.  *See*, *Rodriguez*, 2018 WL 4783977, at *19 n.23.

### B.   Arbitrary and Capricious Action Under APA

Plaintiffs ask the Court to find that Defendants' failure to adjudicate EAD applications within the 90-day Period or issue interim EADs under 8 C.F.R. § 274a.13(d) was an arbitrary and capricious agency action under 5 U.S.C. § 706(2)(A).  Compl. ¶¶ 49-51; Pls.' Br. at 21-22.  The APA requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be -- arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "[I]n deciding whether agency action is arbitrary and capricious, a court considers whether the agency 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150-51 (2d Cir. 2008) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Whether an agency action is arbitrary and capricious is a legal question to be resolved based on agency records in existence at the time of the action, and the Court will not engage in an evidentiary hearing or a *de novo* review.  *See*, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Guan v. Gonzalez*, 432 F.3d 391, 394-95 (2d Cir. 2005); *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000).  Plaintiffs bear the burden of showing that an agency's actions are arbitrary and capricious by citation to evidence in the administrative record.  *See*, *Boatmen v. Gutierrez*, 429 F. Supp.2d 543, 548 (E.D.N.Y. 2006); *Glara Fashion, Inc. v. Holder*, 2012 WL 352309, at *6 (S.D.N.Y. Feb. 3, 2012).  When undertaking APA review, a court properly

26

may grant summary judgment based upon a finding that there are no genuine issues of material fact in dispute with regard to the administrative record.  *See*, *Soler v. G & U, Inc*., 615 F. Supp. 736, 740 (S.D.N.Y. 1985); *Just Bagels Mfg., Inc. v. Mayorkas*, 2012 WL 5233643, at *6-7 (S.D.N.Y. Oct. 24, 2012).

There is no genuine dispute as to any material fact in this case.  As discussed above in Section III.A. of this Opinion, the Court finds that Defendants' contentions and explanations for disregarding their obligations under the pre-January 2017 version of 8 C.F.R. § 274.13(d) are baseless and arbitrary.  As an initial matter, the pre-January 2017 version § 274.13(d) is clear and unambiguous as to Defendants' obligation either to adjudicate Plaintiffs' EAD applications within the 90-day Period or issue interim EADs.  Any argument to the contrary is irrational.  In addition, Defendant's contention that the pre-January 2017 version of § 274.13(d) should not apply to Plaintiffs because USCIS has not reviewed any petition filed after August 25, 2014 is illogical and disingenuous.  Here, Defendants attempt to benefit from their dereliction and delay.  Moreover, Defendants make immaterial arguments by continuously conflating their obligations under § 1184(p)(6) with those under § 274.13(d).  Therefore, the Court finds that Plaintiffs have met their burden of showing that Defendants acted arbitrarily or capriciously when they chose not to implement the pre-January 2017 version of 8 C.F.R. § 274.13(d).  Nevertheless, as set forth below, the Court need not address this matter further because the Court finds that Defendants "unlawfully withheld" agency action.

### C.     Relief Under APA

The Court finds that Defendants "unlawfully withheld" agency action under 8 U.S.C. § 706(1).  The language in the pre-January 2017 version of § 274a.13(d) imposes a nondiscretionary duty on Defendants to act.  The regulation states that USCIS "*will* adjudicate" EAD applications

27

within 90 days and "*will* result in the grant" of interim EADs.  8 C.F.R. § 274a.13(d) (emphasis

added).  Accordingly, the Court finds that Defendants "unlawfully withheld" agency action and

Defendants are ordered to comply with the pre-January 2017 version of 8 C.F.R. § 274a.13(d).

*See*, *Rodriguez*, 2018 WL 4783977, at *19 (citing *Yakubova v. Chertoff*, 2006 WL 6589892, at *3

(E.D.N.Y. Nov 2, 2006)).

## III.    Mandamus Relief

Plaintiffs seek a writ of mandamus to compel Defendants to adjudicate Plaintiffs' EAD

applications under 8 U.S.C. § 1184(p)(6) and to issue interim EADs to Plaintiffs under 8 C.F.R. §

274a.13(d).  Compl. at ¶¶ 18-20; Pls.' Br. at 25.  The federal mandamus statute provides district

courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28

U.S.C. § 1361.  A district court has the power to issue a writ of mandamus, which is an

extraordinary remedy.  *See, Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004).

Mandamus relief may be granted if a plaintiff can demonstrate that three enumerated

conditions are present: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined

and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate

remedy available."  *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (internal quotation marks

and citations removed).  Plaintiffs are not entitled to mandamus relief because they have other

adequate remedies available under the APA.  Therefore, Plaintiffs' mandamus claim is denied.

## IV.    Attorney' Fees and Costs Under Equal Access to Justice Act

Plaintiffs seek to recover attorneys' fees and costs pursuant to the Equal Access to Justice

Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412.  Compl. at ¶ 20.  EAJA provides that:

> Except as otherwise specifically provided by statute, a court shall
> award to a prevailing party other than the United States fees and

> other expenses . . . incurred by that party in any civil litigation . . .
> brought by or against the United States …, unless the court finds
> that the position of the United States was substantially justified or
> that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  A "prevailing party" is defined as "one who has been awarded some

relief by the court."  *Buckhannon Board & Care Home v. W.V. Dep't of Home and Human Res.*,

532 U.S. 598, 602 (2001).  Plaintiffs here are the prevailing party and are entitled to attorneys'

fees and costs.  *See*, 28 U.S.C. § 2412(d)(1)(B).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the complaint, or in the

alternative, for summary judgment is denied and Plaintiffs' cross-motion for summary judgment

is granted.   Accordingly, Defendants are hereby ordered to adjudicate Plaintiffs' work

authorization within 90 days of the date of this Order or issue Plaintiffs interim EADs pursuant to

8 U.S.C. § 1186(p)(6) and 8 C.F.R. § 274a.13(d).  In addition, Plaintiffs are awarded attorneys'

fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) and shall submit

their motion with documentation on or before August 31, 2021.  The Clerk of the Court is directed

to enter judgment on behalf of Plaintiffs and this Court shall retain jurisdiction to enforce the

judgment.


SO ORDERED.

Dated: Brooklyn, New York
       August 9, 2021

/s/
_____
DORA L. IRIZARRY
United States District Judge
